Ms. Baldini-Potterman May it please the Court. My name is Maria Baldini-Potterman and I represent Petitioner Eber Salgado-Gutierrez. In this particular case, there are three issues that I would like to address. The first is whether the Board erred as a matter of law in failing to properly consider this Court's recent precedent in two cases and apply it to the record evidence. This constitutes a question of law over which this Court does have jurisdiction despite Mr. Salgado's misdemeanor possession for cocaine conviction from 2005. The second issue that I would like to address is whether the Board erred as a matter of law by affirming the judge's decision in holding that Petitioner had demonstrated that it would be unreasonable for him to relocate outside of his hometown in Mexico, in Veracruz in particular. And the third issue that I would like to address is the issue of the particular social group and whether the named particular social group of Mexicans who have resided in the U.S. for many years and are perceived upon the removal of Mexico as wealthy is an error of law. In this particular case, the immigration judge found all of the witnesses credible. The DHS did not dispute the country reports or the numerous published articles that were submitted demonstrating violence in Mexico and particularly in Veracruz. So where is he now? Your Honor, this Court denied the emergency motion for the stay after briefing on the issue and he is currently in hiding. You're not speaking loud enough. I'm sorry. Where is he? He is currently in hiding in Veracruz, according to the family. He's in Veracruz. Why is he in Veracruz? Isn't Veracruz an area where the Zetas are active? Yes, it is, Your Honor, and that is where he had the most. Could you speak up, please? I can't hear you. I'm sorry, Your Honors. It is, may I move the microphone closer? You can pull it closer to you. There you are. Okay. I don't know if it will do anything. The best we can do. Okay. Is that any better, Your Honors? Oh, yeah, I think it's better. Okay. Thank you. Fantastic. The last information that I had received from his sister and his brother-in-law was that he was back in Veracruz and hiding because that is where he had family, and that is all the information the family has since provided to me. Now, couldn't he, I guess what the government argues is that he could relocate to some other place where the Zetas are less active? Yes, Your Honor, and one of the places that the immigration judge had found that he could relocate to was Ahuaca. What the immigration judge and the board failed to consider, however, is that Ahuaca is a bordering state of Veracruz. The other place is Mexico City, and in the documentation that was submitted, it was shown that the Zetas did have some operations in Mexico City. Veracruz is one of the states where the Zetas have essentially taken control within the drug cartel wars that have been penetrating Mexico since 2006, and the Mexican Army was sent to the state of Veracruz, followed by the Mexican Marines, to try to fight against the Zetas. So you are correct, Your Honor, the Zetas are in Veracruz. But wouldn't he be safer if he went, I don't know, Puerto Vallarta, for example? That's on the Pacific Coast, the opposite of Veracruz, so wouldn't he be safer there? He may be safer there, Your Honor, but having lived in the United States since 1996, when he was deported back to Mexico, one of the issues that he testified to was that he would be perceived as returning from the U.S. because he didn't have any ties anywhere else in the country besides Veracruz, Ahuaca, and Mexico City. He would be seen as an outsider moving into the areas outside of Veracruz. So, Your Honors, we submit that the board did not consider all of the factors under the regulation regarding internal relocation and whether it was reasonable or not. One of the other issues that arises in this case is both he and his girlfriend had testified that the U.S. citizen children who were teenagers would also return with them to keep the family together because they were very close. The kids would stand out from other children in Mexico as they speak English as their first language, dress differently, and act differently. The board, the immigration judge in this particular case, relied on his three years in college of education to become an electrician and his different types of employment in the U.S. Mr. Salvato was deported as a 40-year-old man. He was not deported as someone in the age range of 20s, of his 20s here. The other issue that the board had ignored was the conditions throughout Mexico. In its decision, it didn't address directly the extensive evidence that we provided demonstrating the cartel wars throughout the country of Mexico or the government's noted inability to control the Zetas in particular. This court did address that, the issue of the brutality of the Zetas, as well as what the burden is in Rodriguez-Molinero v. Lynch and Mendoza-Sanchez v. Lynch. And this court had looked at what the standard is as far as would be in danger, if a petitioner would be in danger of torture upon his return to Mexico, and noted that in particular an applicant for relief under the Convention Against Torture does not have to prove that the Mexican federal government could not protect him from torture if he demonstrated that the local law enforcement is corrupt and working with the cartels and therefore unable to protect people from torture. This court used rather strong language about the situation in Mexico and the cartels targeting people in Mexico who have returned from the U.S. Based on the facts of this case are different than petitioner's case, but the fact remains that the Mexican government is unable to control the cartels and its corrupt law enforcement agents at both the local levels and the federal levels. And we asked this court to reverse the board's finding on its cat holding in particular. With respect to the issue of membership in a particular social group, the respondent argued in its response briefer and relied on Dominguez-Polito, a recent decision by this court. That decision was not before the Board of Immigration Appeals at the time because its decision was issued after the board had already made its decision. The government did not file a motion to remand with this court for the board to consider Dominguez-Polito, and we asked that the court not rely on that because the board did not have the opportunity to address that particular issue. With respect to a matter of WGR, the board had affirmed the immigration judge's finding that petitioner's particular social group was not cognizable. In doing so, the immigration judge, however, had found that the petitioner had provided substantial corroborative evidence that would be sufficient, but found that there was no nexus on the particular social group issue, and therefore she denied withholding of removal on that issue. We asked the court to reverse the board's decision on the particular social group and find that the particular social group as distinguished by petitioner as the particular social group of Mexicans who have resided in the U.S. for many years and are perceived as wealthy upon their removal to Mexico is a particular social group. As demonstrated by the record, Mr. Salgado, Petitioner Salgado, is not a recent arrival. He's not someone who's been here a short time. He was in the United States for 20 years before he was deported from the United States. Thank you, Your Honors. Okay, thank you very much. Ms. Monaco? Good morning, Your Honors. May it please the court, Carrie Monaco representing the respondent, Attorney General Loretta Lynch. The petitioner does not dispute that he has been convicted of an offense involving a controlled substance, nor does he dispute that as a result of that conviction, that this court's jurisdiction is limited to questions of law or constitutional claims raised in his petition for review. As discussed in the government's brief, the petitioner has failed to raise any reviewable questions of law or constitutional claims in the brief with respect to his withholding of removal claims. But isn't he in danger of hiding out in Veracruz? Well, as the immigration judge found that he could reasonably relocate within Mexico. Where? The record evidence shows that there are numerous areas within Mexico that are not controlled by the Zetas, and we point to that evidence in our brief. Specifically on page 950, there's an article. Okay, so he moves to a town where he's never been before. Correct. And now what? Well, the form of relief. They ask him, where are you from? Who are you? What does he tell them? I'm from the United States. I mean, he has lived here. I'm from Veracruz. I'm fleeing the Zetas. The immigration service seems to think it's really easy to relocate yourself in a foreign country. I don't think that's true. He's going to come into some town he's never been in, and the locals are going to be suspicious, wonder, who is this guy? Right? What does he say? Well, there's no evidence that anyone would be interested in him. Just use your common sense, how it feels to be relocating within a country like Mexico. I mean, I don't know how that would be different than relocating in other countries. Oh, you don't think there's any difference between Mexico, say, and Canada? Well, what I'm saying is that I'm not sure that moving to another city is going to raise any other questions than would happen. He's going to be asked by the locals who he is, where he's from, right? Perhaps. They're going to be suspicious of him. But the question is who's going to be suspicious of him. Do people move around a lot in Mexico, move from town to town? I don't have any information on that. People move from town to town in almost every country in the world. I would imagine so, and that's exactly my point, that I'm not sure it would raise any other questions than people moving in any other country. What do you know about this country or any other country? I don't know what would happen. The question, though, is for this form of relief, who would be targeting him and where? And his claim is that the Zetas would target him throughout the entire country of Mexico. But as the agency found, the evidence does not prove that fact. How long has he been where he is now? Pardon? How long has he been where he is now? He was removed from the United States back in May, I believe. Of this year. Yeah, correct, correct. And up until now, nobody has attacked him? Not that we are aware of, no. Okay. Now what is this notion about wealth is not an immutable characteristic and somehow if there are gangs in Mexico that target wealthy people, that's not a ground for resisting removal? Correct. And both the board and this court have found that wealth is not an immutable characteristic. Okay, so tell me what is an immutable characteristic? It is something that can't be changed. Well, give me an example. Well, the court found in NLA... I don't want court fun. Give me an example of what you consider to be an immutable characteristic. Race, for example. Land ownership. This court has found land ownership to be... Land ownership is immutable? This court found that it is, yes. That's ridiculous. You can sell it, obviously. Correct. What's immutable about owning land? It's just another form of wealth. If wealth isn't an immutable characteristic, how could land ownership be? The court specifically distinguished between those two. How so? Finding that wealth does change over time and that land ownership, even if someone sells the land, they still may be connected to that particular... That's a ruling of this court? Correct. That's ridiculous. People are constantly selling land. They don't have anything more to do with it. It's just another form of wealth, like money, right? Yes, that would be our argument, Your Honor. We're just following the law of this court. Is sex an immutable characteristic? Apparently not anymore. Yeah, that's a tough question. Why is that a tough question? I don't feel... As Judge Bauer pointed out, we know it's not immutable. Correct. I can't speak to the government's position on that issue at this time, and it's not before the court. The subject hasn't come up in your bailiwick, I assume. Pardon? The subject hasn't come up in your bailiwick, I assume. Right. Right. You treat sex-based persecution claims as viable grounds, right? Correct. So why can't you just say that? Yes, that's gender-based claims. Sex-based claims are cognizable. Correct. Right, and we've held that in a number of contexts. So wouldn't it be better to get rid of immutable, since you don't have to have an immutable characteristic to be protected against removal? Well, I mean, there's three different factors that the agency looks at in determining whether it's a social group. The issue in this case, though, is not involving necessarily the definition of a particular social group, because we have two dispositive findings, the nexus finding and the internal relocation finding, that prevent this petitioner from winning on Petition 4 review. Why is the only proper issue whether he is in significant danger? Who cares about immutable characteristics? I don't get it. Well, and our argument is that the issue is that he hasn't proven that he's in danger because he hasn't shown a nexus to a protected ground and he hasn't shown that he's unable to avoid persecution or torture by relocating within another area of the country. And nor do the country conditions support his claim that he has a substantial risk of being persecuted or tortured throughout the entire country of Mexico by the Zetas, which is the group that he specifically fears. But again, this court's jurisdiction is limited to questions of law and constitutional claims, and the petitioner's claims are essentially challenges to the weighting of evidence that the immigration judge did in his decision and that the board affirmed. My opposing counsel is arguing that there's a legal error because the immigration judge did not give enough weight to certain evidence and gave too much weight to other evidence. But this court has made clear that that is a factual question over which it does not have jurisdiction. And because the court's jurisdiction is limited to questions of law, pure questions of law, the court has made very clear mixed questions of law are not within the scope of jurisdiction in this case. Because the court's jurisdiction is limited to questions of law and because petitioner has not raised any reviewable questions of law, the government urges the court to dismiss the petition for review. Well, what would be your position? Suppose he's right that there's no place in Mexico where he can be safe from the long arm of the Zetas. Would that suffice to allow him to return to the United States? I mean, he would have to demonstrate, if we're talking about the withholding of removal claim, he would still have to demonstrate that there's a nexus between the Zetas harming him and a protected ground. General criminal violence is not enough for the withholding of removal standard. There has to be a connection to a particular social group or some other protected ground, which he has not shown. Supposing that there's no place in Mexico where he would be safe from the Zetas, would that be enough to entitle him to cancellation or withholding of removal? I mean, I think we have to look at why he wouldn't be safe from the Zetas. Is it just because... Because they want to kill him, they don't like him. Him specifically, because he's a deportee? Well, what are you fussing with me about? I'm just asking you a simple question. The Zetas don't like him, they want to kill him. Anywhere he relocates to Mexico, the long arm of the Zetas will kill him. Now, is that alone enough to entitle him to withholding of removal or is something more required? No, he would have to show that there is a nexus to a protected ground. Would you leave out the word nexus, please? What in addition would he have to show, besides that his life was in danger? That he's being targeted for some reason other than just general criminal violence that may occur throughout Mexico. No, no, no. They don't like him. It's not that he's just some ordinary person whom they bump off to rob. They don't like him. They hate him. They want to kill him. Is that enough? To be a target of the Zetas, is that enough to get you withholding of removal? Not unless you can show that he's a member of a particular social group or that they're attacking him. I don't understand. We're going to send people back to be killed in Mexico because they're in the Zetas' target? Simple answer is possibly. That's not enough? Under the statutory requirements, it's not enough. The person who would strike you is rather preposterous. I mean, I certainly... This isn't an asylum claim. I mean, I think, you know, the level of harm or the likelihood of harm that he must show under a withholding claim or a CAT claim is much more significant than an asylum claim. Yeah, we're not talking about that. I'm assuming that the Zetas are out to get him and they have a long arm and they're violent and they have a good shot at killing him. If that's true, isn't that enough for withholding of removal? Yes. To simply answer your question, if the Zetas are interested in him because of his membership in a social group, either because he's a... Oh, no, forget the social group. I mean, that's our position. They regard him as an enemy of the Zetas or he owes them money or who knows what. And so they want to kill him and there's a substantial danger that they will succeed. I'm just asking whether that isn't enough. Why don't you say maybe you let it go at that? Let me finish. I don't know why you have to talk about social groups. Is that what the statute says? Yes. That's why. What does it mean? You mean that we give no protection to foreigners, to deportees who are in danger of death unless they belong to a social group? That is the legal requirements, Your Honor. Yes. Could that make any possible sense? This is the statutory scheme that Congress set forward, that the board has affirmed, that this court has affirmed, and I'm bound by the law that exists. Wait a minute. I can't imagine sending innocent people to their death if they don't belong to a social group. And that's what Convention Against Torture claims are for. You don't have to prove a social group for that. You would have to prove a likelihood of torture. You don't have to prove that there is a nexus to the protected ground. And so that is what the relief for Convention Against Torture is available for. Okay. Well, that's good. And I was glad you mentioned the Convention Against Torture. Okay. Well, thank you. Thank you, Your Honors. So, Ms. Boldini-Poterman, do you have anything further? Yes, Your Honors. Just two small points to get back to. Regarding the government's position about fear of persecution and torture by the Zeta, she keeps focusing on by the Zetas. Petitioner Salgado also raised the claim that he feared persecution and torture by corrupt government officials who are working in conjunction with the Zetas. And that was raised at the IJ level, before the Board, and again in their motion to supplement based on this Court's recent decisions. As far as protection to deportees under the Convention Against Torture, that is correct. And we would ask the Court to look closely at both the CAC claim and the particular social group issue and reverse the Board on its findings. Thank you. What does Zetas have against him? Your Honors, in this particular case, his half-brother, Hippolito, there was an attempted kidnapping of Hippolito in 2005, and it was stopped by some townspeople on the streets. And his nephew, Israel, was kidnapped at the end of October 2014 or beginning of November 2014. There's no evidence that either of those were motivated or carried out by the Zetas. You're correct, Your Honor. There is no affirmative... So the Zeta overlay here is not supported by the evidence. The evidence is in the record that in the area of Tres Valles, Veracruz, that the Zetas are evidence there. We know that the Zetas are bad and that they operate there, but these incidents with his relatives have nothing to do with the Zetas as far as the record is concerned. So it would be sheer speculation to say that he's being targeted by the Zetas. As far as the record tells us, they don't even know his existence or his family's existence. Yes, Your Honor. Thank you. Okay, well, thank you very much to both counsel.